## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| COLUMBIA CASUALTY COMPANY and BERKSHIRE HATHAWAY SPECIALTY INSURANCE COMPANY, | ) ) ) ) | C.A. No.: |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| THE NASH ENGINEERING COMPANY | ) ) ) | |
| Defendant. | ) ) ) | |

## DECLARATORY JUDGMENT COMPLAINT

### INTRODUCTION

Pursuant to 28 U.S.C. §§ 2201-2202, Plaintiffs Columbia Casualty Company (hereinafter "Columbia") and Berkshire Hathaway Specialty Insurance Company, formerly known as Stonewall Insurance Company, (hereinafter "Stonewall") bring this action for a declaratory judgment from the Court concerning the rights and obligations of the Parties[1] under umbrella level liability insurance policies issued to The Nash Engineering Company (hereinafter "Nash") with regard to various lawsuits against Nash alleging bodily injury resulting from exposure to and/or inhalation of asbestos.  Without limitation, Columbia and Stonewall seek the following declarations from the Court:

a.     That the Columbia and Stonewall umbrella level liability policies attach only in excess of the limits of liability stated in primary level liability insurance policies issued to Nash and/or of each occurrence limits of liability retained by Nash;

b.     That the Columbia and Stonewall umbrella level liability policies require that

---

[1] "The Parties" refers to Nash, Columbia and Stonewall.

Nash maintain those underlying primary limits, without impairment or reduction, except for payment of damages or settlements actually covered by the terms of the underlying primary level policies;

c.      That the limits of liability stated in the primary level policies underlying the Columbia Policy have not been exhausted by payment of covered damages and/or settlements;

d.      That the each occurrence retained limit/deductible amount underlying the Stonewall umbrella policy has not been paid by Nash with respect to any occurrence at issue; and

e.      That neither Columbia nor Stonewall has a present obligation to (1) defend Nash against any underlying matter, (2) pay settlements and/or judgments agreed to by or entered against Nash or (3) contribute to payment of any Nash defense costs, settlements or judgments.

In support of the relief sought herein, Stonewall and Columbia allege as follows:

### THE PARTIES

1.      Plaintiff Stonewall (now known as Berkshire Hathaway Specialty Insurance Company) is a corporation organized under the laws of the State of Nebraska with its principal place of business in Omaha, Nebraska.  Stonewall issued Umbrella Liability Policy number 56016590 to Nash, with a policy period of April 3, 1986 to January 1, 1987 ("the Stonewall Policy").

2.      Plaintiff Columbia is a corporation organized under the laws of the State of Delaware with its principal place of business in Chicago, Illinois.  Columbia issued umbrella liability policy number RDU 365 29 86 to Nash, with a policy period of April 1, 1977 to January 1, 1978 ("the Columbia Policy").

3.      Defendant Nash is a corporation organized under the laws of the State of Connecticut with its principal place of business in Freeport, Maine.  It was incorporated in

Connecticut on February 11, 1921.  On or about April 20, 2020, Nash filed a Certificate of Dissolution with the State of Connecticut.  Nash continues to exist as a corporate entity, with the capacity to sue and be sued, for various purposes, including resolution of the disputes and controversies presented in this civil action.

**JURISDICTION AND VENUE**

4.     Actual controversies exist between Stonewall and Nash and between Columbia and Nash over (1) the respective rights and obligations of the Parties under insurance policies issued to Nash, (2) whether Stonewall and/or Columbia have a present obligation to defend and/or indemnify Nash under the Stonewall Policy or the Columbia Policy with respect to the underlying asbestos bodily injury claims and (3) if yes, the extent of such obligation(s).

5.     The amount in controversy between Stonewall and Nash exceeds $75,000, exclusive of interest and costs.

6.     The amount in controversy between Columbia and Nash exceeds $75,000, exclusive of interest and costs.

7.     This Court has jurisdiction over the disputes between the Parties pursuant to 28 U.S.C. § 1332(a)(1) because complete diversity of citizenship exists between Plaintiffs and Nash.

8.     Venue is proper in the District of Connecticut under 28 U.S.C. § 1391(b)(1) and (2) because Nash – a Connecticut corporation – resides in Connecticut and a substantial part of the events giving rise to the actual controversies between the Parties occurred in Connecticut.

**9.**     The requested relief is authorized pursuant to 28 U.S.C. §§ 2201-2202 because there are present and actual controversies between the Parties of sufficient immediacy and reality to warrant issuance of the declarations sought herein and all other appropriate supplemental relief.

## FACTUAL BACKGROUND

10.     During its period of operation, Nash manufactured industrial products, such as pumps and compressors, which contained or were used in connection with asbestos and/or other products that contained asbestos.

11.     Nash has been named as a defendant in numerous asbestos-related personal injury lawsuits in various jurisdictions dating back to at least 2001 ("the Nash Asbestos Lawsuits"). The Nash Asbestos Lawsuits typically allege bodily injury resulting from exposure to asbestos over long periods of time, beginning as early as the 1950's and continuing as late as through the present day.

12.     Upon information and belief, beginning at some point in the 1970's no later than 1975, and continuing through at least 1991, Nash was an insured under primary level general liability and/or products liability insurance policies issued by The Hartford Accident & Indemnity Company or related insurance companies (hereinafter "The Hartford").

13.     Upon information and belief, Nash and The Hartford entered into an agreement under which Nash purported to release The Hartford from certain obligations, including obligations under a Hartford primary level policy in place during the January 1, 1977 to January 1, 1978 time period designated Policy No. 31C651735 ("the 1977 Primary Policy").

14.      In the context of asbestos bodily injury claims like The Nash Asbestos Lawsuits, applicable Connecticut law is well established regarding what must happen during the time period a liability insurance policy is in effect to trigger coverage and regarding how liability is allocated to a policy when the triggering happening or event occurs over an extended period of time.

15.     Coverage is triggered under the policies in place across the entire time period

from a claimant's first exposure to asbestos until the earlier of (1) the claimant's death or diagnosis with an asbestos related disease or (2) insurance becoming unavailable to the insured for asbestos related bodily injury claims.

16.     Under Connecticut law, liability for defense and indemnity costs is allocated among insurers and the insured on a several, pro-rata, time on the risk basis across that entire triggered time period.

17.     Here, upon information and belief, these rules of law mean that Nash's defense and indemnity costs for each of the Nash Asbestos Lawsuits must be allocated pro-rata over the time period from the relevant claimant's first exposure to asbestos to at least January 1, 1991.

18.     Upon information and belief, The Hartford has paid Nash indemnity expenses in connection with the Nash Asbestos Lawsuits under Policy No. 31 CLRMP2300, as in effect between January 1, 1986 and January 1, 1987 ("the 1986 Primary Policy"), the primary level policy directly below the Stonewall policy.

19.     Upon information and belief, those payments were in excess of the share properly allocated to the 1986 Primary Policy under the trigger of coverage and allocation of liability rules stated in paragraphs 14 through 17 above.

20.     Upon information and belief, as a result of this series of overpayments, by late 2015, The Hartford had made indemnity payments under the 1986 Primary Policy in an amount equal to that policy's $1.0 million aggregate limit of liability.

21.     Upon information and belief, the Hartford has paid nothing with respect to the Nash Asbestos Lawsuits under the 1977 Primary Policy.  On information and belief, that policy includes an aggregate limit of liability for products liability claims of $500,000.  The Columbia Policy attaches only in excess of that aggregate primary limit.

## COUNT ONE: DECLARATORY JUDGMENT WITH REGARD
## TO THE COLUMBIA POLICY

22.     Columbia incorporates paragraphs 1 through 21 of the Complaint as if fully set forth herein.

23.     Under the Columbia Policy, Columbia is obligated to indemnify Nash only "for loss in excess of the total applicable limits of liability of underlying insurance . . . ."

24.     The 1977 Primary Policy is underlying insurance applicable to the Nash Asbestos Lawsuits with respect to the Columbia Policy and has limits of $500,000 each occurrence and in the aggregate.

25.     Upon information and belief, Nash purported to release rights under the 1977 Primary Policy pursuant to the settlement agreement between Nash and The Hartford.

26.     Upon information and belief, the aggregate policy limits of the 1977 Primary Policy have not been paid.

27.     Columbia has no present obligation to defend or indemnify Nash with respect to the Nash Asbestos lawsuits because the limits of the primary policy underlying the Columbia Policy have not been exhausted by payment of covered claims.

28.     Under the terms of the Columbia Policy, Nash is required to maintain its underlying primary insurance without impairment, except by payment of covered claims.

29.     Endorsement No. 9 to the Continental Policy states:

[Nash] agrees that the policies listed in the schedule of underlying insurance and renewals and replacements thereof not more restrictive thereof shall be maintained without alteration of terms or conditions in full effect during the currency of this policy except for any reduction or exhaustion of the aggregate limits of liability in the **underlying insurance** PROVIDED SUCH REDUCTION OR EXHAUSTION IS SOLELY THE RESULT OF INJURY OR DESTRUCTION OCURRING DURING THIS POLICY PERIOD, AND NOT BEFORE. (emphasis in original)

30.     When, upon information and belief, Nash purported to release Hartford from its obligations under the 1977 Primary Policy, Nash violated this condition.

31.     Endorsement No. 9 of the Columbia Policy further provides that such a violation does not lower of the attachment point of Columbia's umbrella insurance obligations:

> Failure of [Nash] to comply with this condition shall not invalidate this policy, but, in the event of such failure, [Columbia] shall only be liable under Coverage A and only to the same extent as if [Nash] had complied with this condition.

32.     Nash has demanded that Columbia defend and indemnify it with respect to the Nash Asbestos Lawsuits and contends that Columbia has breached its obligations under the Columbia Policy by refusing to defend and indemnify.

33.     An actual controversy exists regarding the rights and obligations of Nash and Columbia under the Columbia Policy with respect to the Nash Asbestos Lawsuits.

WHEREFORE, Plaintiff Columbia requests that this Court:

1.     Enter a judgment declaring that Columbia has no present obligation to defend or indemnify Nash in the Nash Asbestos Lawsuits;

2.     Enter a judgment declaring that Columbia has no obligation to defend or indemnify Nash with respect to the Nash Asbestos Lawsuits unless and until the applicable aggregate limit of liability of the 1977 Primary Policy have been paid in satisfaction of covered and properly allocated claims;

3.     Enter a declaratory judgment that upon proper exhaustion of all underlying limits, Columbia's obligation to pay defense and indemnity costs is limited to its pro rata, time on the risk share; and

4.     Grant such other, further and supplemental relief in favor of Columbia as is just and appropriate.

## COUNT TWO: DECLARATORY JUDGMENT WITH REGARD TO THE STONEWALL POLICY

34.     Stonewall incorporates paragraphs 1 through 33 of the Complaint as if fully set forth herein.

35.     The Stonewall Policy provides that Stonewall shall only be liable for ultimate net loss in excess of …the applicable limits of liability of the policies of underlying insurance set forth in the Schedule of Underlying Insurance …" Stonewall's liability under the Stonewall Policy does "not attach unless and until [Nash], or [Nash's] underlying insurers, shall have paid the amount of the … underlying limits …"

36.     The Stonewall Policy includes a condition precedent requiring Nash to maintain all underlying limits of liability in full force and effect and prohibiting the reduction of those limits by payments not properly allocated to the Stonewall policy period.

37.     The Stonewall Policy states:

Maintenance of underlying insurance: The underlying coverages, extensions and limits of liability set forth in the schedule of underlying insurance, shall be maintained in full effect during the period this policy remains in force *except for any reduction of the aggregate limits contained therein solely by payment of claims for occurrences which take place during this policy period*. (Emphasis added).

38.     In the event of failure by Nash to maintain all underlying limits as required, Stonewall is liable only to the extent it would have been liable had Nash maintained those limits.

39.     The Stonewall Policy states:

Failure of the insured to maintain such policies in effect or to meet all conditions and warranties under such policies shall not invalidate this policy but in the event of such failure, the company shall only be liable to the same extent as it would have been if such policies had been maintained in effect.

40.     In the event of proper exhaustion of aggregate limits of liability underlying the Stonewall Policy, Stonewall's obligation to pay is excess of an additional $25,000 per occurrence limit retained by Nash.

41.     The Stonewall Policy states:

> In the event of reduction or exhaustion of any aggregate limit of liability under the policies of underlying insurance by reason of payments made thereunder, this policy shall: (I) in the event of reduction, pay excess of at least a minimum amount of $25,000 per occurrence [and] (II) in the event of exhaustion, pay excess of at least a minimum of $25,000 per occurrence …

42.     On information and belief, with respect to each occurrence present in each of the Nash Asbestos Lawsuits, Nash has not paid the $25,000 per occurrence retained amount required before attachment of any Stonewall obligation to pay defense or indemnity costs.

43.     Stonewall does not have any present obligations to Nash under the Stonewall Policy.

44.     Nash has demanded that Stonewall defend and indemnify it with respect to the Nash Asbestos Lawsuits and contends that Stonewall has breached its obligations under the Stonewall Policy by refusing to defend and indemnify.

45.     An actual controversy exists regarding the rights and obligations of Nash and Stonewall under the Stonewall Policy with respect to the Nash Asbestos Lawsuits.

WHEREFORE, Plaintiff Stonewall requests that this Court:

1.     Enter a judgment declaring that Stonewall has no present obligation to defend or indemnify Nash in the Nash Asbestos Lawsuits.

2.     Enter a declaratory judgment that Stonewall has no obligation to defend or

indemnify Nash with respect to the Nash Asbestos Lawsuits until the applicable aggregate limit of liability of the 1986 Primary Policy has been paid and until Nash has paid the $25,000 retained limit applicable to each occurrence presented by each of the Nash Asbestos lawsuits;

3.      Enter a declaratory judgment that upon exhaustion of all underlying limits and payment by Nash of all retained limits, Stonewall's obligation to pay defense and indemnity costs is limited to its pro rata, time on the risk share; and

4.      Grant such other, further and supplemental relief in favor of Stonewall as is just and appropriate.

## JURY TRIAL DEMAND

Plaintiffs Columbia Casualty Company and Stonewall Insurance Company demand a trial by jury on any issue presented in this matter that is properly so triable.

COLUMBIA CASUALTY COMPANY AND
BERKSHIRE HATHAWAY SPECIALTY
INSURANCE COMPANY
By their attorneys,


*/s/ Kevin J. O'Connor*
Kevin J. O'Connor, Fed. Bar No. 29097
koconnor@hermesnetburn.com
HERMES, NETBURN, O'CONNOR
& SPEARING, P.C.
265 Franklin Street, Seventh Floor
Boston, Massachusetts 02110-3113
(617) 728-0050 (tel)
Dated: August 9, 2021      (617) 728-0052 (fax)